ORIGINAL

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

**BID PROTEST**

FILED
AUG 20 2007
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **AMERICAN DEFENSE SYSTEMS, INC.** | |
| **Plaintiff,** | |
| **v.** | **Case No.** 07-616 C |
| **THE UNITED STATES OF AMERICA** | |
| **Defendant.** | |

**PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

American Defense Systems, Inc. ("ADSI") applies to this Court pursuant to Rule 65 for a Temporary Restraining Order prohibiting Defendant, the United States of America, acting by and through the Department of the Navy, Naval Facilities Engineering Command, NAVFAC Southwest ("Navy"), from permitting Southern California Gold Products ("SCGP") to perform any further work on a contract awarded to SCGP for 21 Construction and Material Equipment ("CME") kits for military construction equipment under Solicitation No. N62473-07-R-4054 ("Solicitation -4054") (the other contract for 14 CME kits was awarded to ADSI) pending the outcome of this proceeding. The Solicitation was issued on an "urgent and compelling circumstances" basis on June 4, 2007; proposals were due by June 5, 2007; and awards were made on June 7, 2007, with all deliveries due within the next 75 days. It appears that SCGP has delivered 12 of the 21 CME kits to date.

This action challenges the Navy's award of the 21-CME kits contract to SCGP as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 28

U.S.C. § 1491(b)(4) (2000), because (i) SCGP is not a presently responsible contractor; and (ii) because the Navy improperly failed to evaluate SCGP's proposal for technical "acceptability" in compliance with the material terms of Solicitation -4054.

The grounds for this motion, which are more fully set forth in the accompanying Memorandum of Points and Authorities, are as follows: (1) ADSI has a strong likelihood of success on the merits in that it can demonstrate that SCGP is not a presently responsible contractor and the Navy had no reasonable basis to adjudge it as such, or its proposal as technically "acceptable;" (2) ADSI will be irreparably harmed if SCGP is allowed to continue to perform by losing the greater than $1 million revenue value of the 21 CME kits improperly awarded to SCGP; (3) interim injunctive relief will not harm the Navy because the 21 CME kits intended for SCGP can be timely supplied by ADSI, the only qualified offeror that has actually supplied add-on armor kits to the U.S. military; and (4) interim injunctive relief will promote the public interest rather than harm it by preserving the integrity of the procurement system and by precluding the use of substandard or non-qualifying add-on armor kits on construction equipment intended for use in combat areas.

ADSI requests an expedited hearing on this motion.

Dated: August 20, 2007

Respectfully submitted,

Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22102
Tel.: (703) 749-1311
Fax: (703) 714-8308
E-mail: moorhouser@gtlaw.com

OF COUNSEL:
L. James D'Agostino
David T. Hickey
Sean M. Connolly
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22101
Tel.: (703) 749-1300
Fax: (703) 749-1301

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| **AMERICAN DEFENSE SYSTEMS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA**<br><br>**Defendant.** | **Case No.____________** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION**

Plaintiff, American Defense Systems, Inc. ("ADSI"), submits this Memorandum of Points and Authorities in Support of Its Application for a Temporary Restraining Order and Motion for a Preliminary Injunction herein. Plaintiff's Complaint challenges the Department of the Navy, Naval Facilities Engineering Command, NAVFAC Southwest's ("Defendant, "the Navy" or "NAVFAC") award of contract to Southern California Gold Products ("SCGP") for 21 Construction and Material Equipment ("CME") kits pursuant to Solicitation No. N62473-07-4054 ("Solicitation -4054"). NAVFAC's award of this contract to SCGP was improper and arbitrary and capricious action because (i) SCGP is not a presently responsible contractor; and (ii) the Navy failed to properly evaluate SCGP's proposal for technical "acceptability" in compliance with the material terms of Solicitation -4054.

As a result of these improper actions, ADSI (1) has a strong likelihood of success on the merits because it can demonstrate that NAVFAC arbitrarily determined SCGP to be a presently responsible contractor and its proposal to be technically acceptable. Further, the lack of

appropriate testing of SCGP's product, verified for its intended use of protecting troops adds to the likelihood that ADSI's arguments on the merits will prevail. Given this improper award, particularly in light of ADSI's belief and supporting lawsuit that SCGP misappropriated ADSI's proprietary and confidential information related to add-on armor contracts, ADSI will (2) be irreparably harmed if SCGP is allowed to continue to perform by losing more than $1 million in lost revenue of the 21 CME kits improperly awarded to SCGP. ADSI meets its burden (3) to show that its request for interim injunctive relief will not harm NAVFAC or the awardee as ADSI already has a contract to produce some of the CME kits and is capable of timely supplying the remaining 21 CME kits. ADSI meets its burden to show that its request for interim injunctive relief (4) will promote the public interest rather than harm it because the public interest is best served by NAVFAC's conduct of unambiguous and non-arbitrary procurements of such important and potentially life-saving equipment. In addition, the public interest will be promoted rather than harmed by preserving the integrity of the procurement system and by precluding the use of substandard or non-qualifying add-on armor kits on construction equipment intended for use in combat areas.

## I. STATEMENT OF FACTS

ADSI is a preeminent supplier of add-on armor kits to armor military construction vehicles and equipment such as dozers, scrapers, mixers, and cranes. The add-on armor kits (or, as here, CME kits) consist of both opaque armor (composite, composite on steel, or steel on steel plating) to protect the top, sides, and bottom of the equipment being operated by military troops in Iraq and around the world, as well as transparent armor for windshields. A critical element of the final product, which goes beyond the free-standing armor itself, is the proper welding or bolting of the armor to the vehicles. Untested and improperly welded/bolted armor may fail

when impacted or worse, the welds/bolts may themselves become lethal shrapnel to the equipment operators. ADSI has developed unique and proprietary solutions to these attachment requirements.

SCGP had been a subcontractor to ADSI and had never previously produced add-on armor kits on its own. SCGP has subsequently become a direct competitor to ADSI, and ADSI believes that SCGP has misappropriated ADSI's proprietary and confidential information in order to compete against ADSI for add-on armor contracts. ADSI has filed a lawsuit against SCGP in the federal district court for the eastern district of New York for conversion, misappropriation, and breach of contract ("the New York Complaint"). See ADSI Complaint, Exhibit A.

Until the instant procurement, the Government has imposed a consistent requirement for these add-on armor contracts that the offerors' kits be tested at the military's Aberdeen Test Center ("ATC"). ADSI's kits, as appropriately welded and bolted to the vehicles and equipment, have been successfully tested. SCGP's kits have never been successfully tested.

In May 2007, the Navy conducted a procurement for CME kits under Solicitation No. N62473-07-R-4024 ("-4024") in which SCGP was the apparent successful offeror, receiving a contract award. Solicitation -4024 contained an express ATC testing requirement. ADSI protested the award at the Government Accountability Office ("GAO") on the grounds that SCGP's kits had never passed ATC testing and, therefore, that SCGP was not a qualified offeror. On June 18, the Navy terminated SCGP's contract under -4024 for convenience on the basis that there had been irregularities in the procurement process, however, the exact reasons for the termination action remain unknown.

Solicitation No. N62473-07-R-4054 ("-4054") which is the subject of this current complaint before the Court was issued by the Navy on June 4 under the "urgent and compelling" circumstances exception to the requirement of the Competition In Contracting Act for full and open competition. FAR 6.302-2. Solicitation -4054 did not contain an ATC testing requirement and it provided only a one-day turn-around time for the submission of offers to supply 35 CME kits for various military construction equipment items. For that reason, ADSI did not have an opportunity to challenge the omission of the ATC testing requirement.

Solicitation -4054 provided that the Navy could make multiple awards and further stated that award would be on the basis of the technically acceptable, lowest cost ("TALC") offer for each of the 35 CME items. On June 7, the Navy awarded 14 CME kits to ADSI and 21 to SCGP at respective total prices of $843,122.06 and $988,000.00. All CME kits are to be delivered within 75 days from the date of contract award.

On June 11, ADSI protested the contract award to SCGP for the 21 CME kits in a new GAO action. Because of the urgency of the requirement, the protest was handled by GAO on an expedited basis. ADSI alleged that SCGP was not a qualified offeror because its add-on armor product had never been tested; because it had never previously provided add-on armor kits under any prime contract; and because whatever acceptable technology it might now have was misappropriated from ADSI. See ADSI Complaint, Exhibit B.

The Navy filed a report on June 21 in which it argued that certain protest issues were untimely and further advised GAO of its determination that SCGP was a qualified offeror for this procurement which, the Navy noted, did not require ATC testing. The Navy claimed that while SCGP's solution had not been ATC-tested, the armor plating material called for in Solicitation -4054 in fact had been tested. In other words, the steel, composite, etc. plating materials had been

tested, not the manner by which SCGP would attach the armor to the vehicles. The Navy also claimed that SCGP had performed successfully under at least one other contract. See ADSI Complaint, Exhibit C.

On July 6, GAO dismissed ADSI's protest, essentially agreeing with the Navy's position, finding that any challenge to the omission of the ATC testing requirement was untimely and that the question of SCGP's ability to perform was a matter of responsibility generally beyond GAO's bid protest jurisdiction. See ADSI Complaint, Exhibit D. The instant action before this Court now follows.

## II. ARGUMENT

A party seeking a preliminary injunction must address, and this Court must weigh, the following four considerations: (1) whether the party seeking the injunction has a strong likelihood of success on the merits; (2) whether the party seeking the injunction will be irreparably harmed if the injunction is denied; (3) whether the threatened irreparable injury would outweigh the harm that the injunction would cause the defendant or third parties, and (4) the impact of the injunction on the public interest. Conscoop-Consorzia Fra Cooperative Di Prod. E Lavoro v. U.S., 62 Fed. Cl. 219 (2004); Overstreet Electric Co. v. United States, 47 Fed. Cl. 728 (2000); ES-Kg. Inc. v. United States, 44 Fed. Cl. 429 (1999). In applying these tests, the Court must consider the factors in relation to one another, so a stronger showing on one factor may offset a weaker showing on the other factors. Overstreet Electric, 47 Fed. Cl. at 743. ADSI addresses each factor below.

### A. ADSI Has A Strong Likelihood Of Success On The Merits

The Contracting Officer's ("CO") decision to award SCGP the contract for 21 CME kits was arbitrary and capricious and in violation of the Federal Acquisition Regulation ("FAR")

because SCGP was not a responsible contractor at the time of award and its proposal was not technically acceptable. Therefore, ADSI has a strong likelihood to succeed on the merits.

The FAR requires the government to make awards to responsible contractors only. FAR 1.103(a). As such, the CO must make an affirmative determination of the contractor's responsibility, in this case SCGP. FAR 1.103(b). "In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility." Id. Although CO's are granted wide-discretion in making responsibility determinations "and in determining the amount of information that is required to make a responsibility determination...this discretion is not absolute." Impresa Construzioni Geom. Domenico Garufi v. United States, 52 Fed.Cl. 421 (2002).

Impresa sustained a protest finding that the CO was unreasonable in determining that the awardee was responsible. 52 Fed.Cl. at 428. The award in dispute involved a contract to provide janitorial services and other maintenance services for a naval air station in Italy. Id. at 422. The awardee was a joint venture, Joint Venture Conserv ("JVC"), comprised of three companies. Id. at 425. Two of the companies were controlled by an individual, Mr. La Mastra, whom an Italian court found to be in involved in a Mafia organization and bid rigging at the same air base. Id. The third company was controlled by the same individual's brother-in-law. Id. While the Italian court had appointed an independent contract administrator for JVC under a receivership agreement, the agreement did not prevent Mr. La Mastra from acting on behalf of JVC or participating in its management. Id. at 426.

Under such circumstances, the U.S. Court of Appeals for the Federal Circuit examined the CO's responsibility determination and ordered that the CO be deposed to explain, among other things, the basis for his responsibility determination. Impresa Construzioni Geom.

Domenico Garufi v. United States, 238 F.3d 1324, 1327 (Fed. Cir. 2001). Subsequently, the Court of Claims found that the CO's responsibility determination was unreasonable since he did not independently investigate the issues regarding the receivership agreement and "lacked sufficient information ... to make the assumptions that he did." 52 Fed.Cl. at 424.

Similarly, here the CO's determination of responsibility for SCGP was unreasonable and based on insufficient information. In order to be deemed responsible, a contractor must be technically and financially capable of performing the contract. FAR 9.104-1. The Navy did not have sufficient information to determine that SCGP is capable of producing and furnishing the CME kits required by Solicitation -4054. To begin with, SCGP has no relevant prior experience producing the CME kits as a prime contractor.[1] Furthermore, in evaluating the proposals, the Navy did not require the opaque armor to be tested at ATC, nor does it set forth how armor pieces are to be welded together. (Solicitation at 2.4.1.). The CO could not have conducted an independent and informed responsibility determination.

If all the offerors had previously produced the armor kits as a government prime contractor, the requirements for opaque armor testing and welding requirements would be helpful, but not necessary, to determine if the offerors are capable of performing. However, here SCGP, as noted above, has no relevant prior experience as a prime contractor in producing CME kits. Without requiring testing of the opaque armor, the government had no assurance that SCGP can perform the contract and was required to make a determination of non-responsibility.

Furthermore, SCGP is not presently responsible because it lacks a "satisfactory record of integrity and business ethics." FAR 9.104-1(d). As outlined in ADSI's New York Complaint,

[1] Although the GAO decision regarding this matter references a previous contract for opaque armor awarded to SCGP, American Defense Systems, Inc., B-299867, (July 6, 2007), no evidence has been presented that SCGP has been awarded a prime contract for this work. Even if it has, it is extremely unlikely that sufficient time has passed to determine if their products will perform adequately.

(See ADSI Complaint, Exhibit A), SCGP has misappropriated ADSI's confidential and proprietary technical data regarding CME kits while it was a subcontractor to ADSI in violation of the non-disclosure and non-compete agreements with ADSI. The Navy knew of these allegations when it awarded the contract to SCGP. Like the CO in Impresa, here the CO should have further investigated the matter. It was unreasonable for the Navy to find SCGP responsible in light of the evidence that it misappropriated proprietary data while performing work on a government subcontract.

Additionally, SCGP's proposal is technically unacceptable because, as discussed above, the Navy had no means to determine if SCGP could produce add-on armor kits that function properly and in accordance with the Solicitation's requirements. If SCGP's kits fail to perform, the cost will be borne not only by the Navy, but by the servicemen and women whose lives they are meant to protect.

ADSI has a strong likelihood of succeeding on the merits because SCGP was neither presently responsible at the time of award nor was its proposal technically acceptable. The Navy lacked "information clearly indicating" that SCGP was responsible because it had no assurance that SCGP could perform the contract and was aware of serious allegations regarding SCGP's integrity and business ethics. FAR 1.103. The Navy did nothing to establish that the 21 CME kits SCGP has been contracted to supply will provide the necessary protection to the equipment operators to which the CME kits will be attached. It failed to properly evaluate SCGP's offer, which it should have found technically unacceptable.

To prevail in a protest, the protester must show not only a flaw in the procurement, but that it was prejudiced by that flaw. Alfa Laval Separation. Inc., 175 F.3d 1365, 1367 (Fed. Cir. 1999). This, in turn, requires a showing that "there was a substantial chance" the protester would

have received award but for the error. Id. The Federal Circuit has clarified that this is not a "but for" test, requiring proof that, had there been no violation of the law, the protester "would have" secured award. Data General Corp. v. Johnson, 78 F.3d 1556 (Fed. Cir. 1996). Rather, it is sufficient to show that there was "a reasonable likelihood" that, but for the violation of the law, the protester would have received award.

Here there is more than "a reasonable likelihood" that ADSI would have been awarded the contract if the Navy had not violated the law. This solicitation was issued on an urgent and compelling basis to ADSI and SCGP only. ADSI was awarded a contract for 14 CME kits. Therefore, if the Navy had not improperly awarded the contract to SCGP, it would have awarded the contract for the other 21 CME kits to ADSI.

B. ADSI Will Be Irreparably Harmed If The Injunctive Relief Is Denied

ADSI is the only contractor who legally possesses the technology to produce the CME kits called for in Solicitation -4054. The lost revenues ADSI will suffer as a result of the improper award to SCGP total over $1,000,000. See Exhibit A. This is significant and will cause the Company irreparable harm.

In addition, a bidder's loss of an opportunity to fairly compete has been recognized as an irreparable harm. SAI Industries Corp. v. United States, 60 Fed. Cl. 731 (Fed. Cl. 2004). Clearly ADSI has suffered this harm. This type of injury has repeatedly been found adequate to prove irreparable harm because it cannot be redressed through money damages alone, such as the bid and proposal cost recoveries otherwise available in this forum. Dynacs Engineering Co. Inc. v. United States, 48 Fed. Cl. 614 (Fed. Cl. 2001); Mangi Environmental Group, Inc. v. United States, 47 Fed. Cl. 10, 19-20 (2000); Overstreet Electric, 47 Fed. Cl. at 743-744.

C. The Irreparable Injury To ADSI Outweighs Any Injury To The Navy

The irreparable injury to ADSI if no injunction is granted far outweighs any inconvenience to the Navy to cancel the award to SCGP and issue the contract to ADSI. The loss of business and revenues ADSI will suffer results from the denial of the opportunity to earn profits on government work awarded fairly in accordance with the law. This type of harm weighs very heavily in this third prong of the test for preliminary injunctive relief. T.S. Products. Inc. v. United States, 48 Fed. Cl. 100, 112-113, (2000); Overstreet Electric, 47 Fed. Cl. at 743, 744. On the other hand, the Navy will suffer little, if any, harm if injunctive relief is granted because it already has a contractor, ADSI, producing 14 of the CME kits, which is capable of timely provided the remaining 21, as well. The necessity for the CME kits to function properly outweighs any relatively minor delay in their production.

D. Granting The Injunction Will Promote Rather Than Harm The Public Interest

"The public interest is served by ensuring a procurement process conforms to applicable procurement regulations." Heritage of America, LLC, No. 07-150C, (Fed. Cl. May 31, 2007) Hawaiian Dredging Constr. Co. v. United States, 59 Fed. Cl. 305,(205); Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147, 1152(Fed. Cir. 1994). The countervailing government interest in efficiency of operations, cannot come at the expense of preserving the integrity of the public procurement process. Mangi Environmental Group. Inc., 47 Fed. Cl. at 19-20(2000). See also MTB Group, Inc. v. U.S., 2005 WL 1350053 (Fed. Cl. June 7, 2005). ("It is in the public interest for the government to conduct fair procurement procedures, and to give honest and fair consideration to all bids.") (internal citations omitted). Accordingly, granting the injunction will support rather than undercut the public interest.

Here the public interest involves more than the fairness and integrity of the procurement process. When a non-responsible contractor with a technically unacceptable proposal performs a contract to produce CME kits, the safety of military personnel is potentially threatened. The public has a strong interest in ensuring that its servicemen and women have protective equipment which functions properly.

## III. CONCLUSION

For the foregoing reasons, ADSI respectfully argues that the Navy's decision to grant a contract for the production of CME kits to SCGP should not be allowed to stand. ADSI requests that the Court grant the preliminary injunction as requested herein. A proposed Order is attached.

Dated: August 20, 2007

Respectfully submitted,

Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22101
Tel.: (703)749-1311
Fax: (703)714-8308
E-mail: moorhouser@gtlaw.com

Of Counsel:
L. James D'Agostino
David T. Hickey
Sean M. Connolly
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22101
Tel.: (703)749-1300
Fax: (703)749-1301

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **AMERICAN DEFENSE SYSTEMS, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA**<br><br>**Defendant.** | **Case No. ___________** |

**AFFIDAVIT OF JOHN F. RUTLEDGE, III**

I, John F. Rutledge, III, am over eighteen years of age and hereby affirm the following based on my personal knowledge:

1. I am Vice President of American Defense Systems, Inc.'s ("ADSI"), 230 Duffy Ave, Unit C, Hicksville, NY 11801.

2. I am responsible for ADSI contract matters, including the submission of an offer in response to Solicitation No. N62473-07-R-4054 ("Solicitation") issued on June 4, 2007 by the Department of the Navy, Naval Facilities Engineering Command, NAVFAC Southwest ("Navy") for the procurement of 35 Construction and Material Equipment ("CME") kits to armor various items of construction equipment.

3. The Solicitation required offers the very next day.

4. The Navy awarded a contract for 21 CME kits to Southern California Gold Products, a former subcontractor to ADSI.

5. Whether or not the opaque and transparent armor required by the Solicitation itself has been tested, I understand that SCGP's CME kits, as welded or bolted to vehicles and equipment has never been tested or proven to meet the Solicitation's requirements. The Navy's lack of testing is in violation of Department of Defense Directive 5000.1, Enclosure 1, Sections E1.1.8 and E1.1.11, which require testing and evaluation to be integrated throughout the defense acquisition process.

6. Only ADSI has a tested final CME kit product for both opaque and transparent armor. To the extent that SCGP has an equivalent to ADSI, it misappropriated it from ADSI.

7. Untested and improperly weld/bolted armor may fail and become lethal shrapnel to the equipment operators.

8. Therefore, the Navy could not have determined SCGP to be a responsible contractor and provider of the CME armor kits. The Navy's award to SCGP was improper and SCGP should not be rewarded with this contract.

9. The Navy's improper award will cost ADSI over a $1,000,000 in lost revenues.

I solemnly affirm under the penalties of perjury pursuant to 28 U.S.C. § 1746, and based on personal knowledge, that the contents of the foregoing Affidavit are true.

08/16/2007
Date

John F. Rutledge, III

STATE OF NEW YORK )
ss.:)
COUNTY OF NASSAU )

Notary Public

THOMAS F.CUSACK
NOTARY PUBLIC, STATE OF NEW YORK
ID No. 02CU6131185
QUALIFIED IN NASSAU COUNTY
MY COMMISSION EXPIRES 08/01/2009

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

BID PROTEST

| | | |
|---|---|---|
| **AMERICAN DEFENSE SYSTEMS, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA**<br><br>**Defendant.** | ) | **Case No.__________** |

**ORDER**

Accordingly, it is hereby ORDERED that the Defendant, United States of America, acting by and through the Department of the Navy, Naval Facilities Engineering Command, NAVFAC Southwest ("Navy"), their officers, agents, employees, and all persons in active concert and participation with them who receive notice of this Order by personal service or otherwise, are enjoined from proceeding with performance of any task order issued pursuant to Solicitation No. N62473-07-R-4054.

No bond is required.

SO ORDERED.

______________________________
Judge, United States Court of Federal Claims

Date:____________________

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing *Complaint, Memorandum of Points and Authorities for a Temporary Restraining Order and for a Preliminary Injunction, Plaintiff's Motion for a Preliminary Injunction, Plaintiff's Application for a Temporary Restraining Order, Affidavit of John F. Rutledge, III, Certification Pursuant to Rule 7.1, and Order* to be served upon the parties listed below by ~~hand delivery~~ facsimile, e-mail, and overnight federal express this 20th day of August, 2007:

Richard Schroeder, Esq.
Department of Justice
Commercial Litigation Branch
Civil Division
8th Floor
1100 L Street, Northwest
Washington, D.C. 20530
Fax.: (202) 353-7988

and to be served upon the party listed below by Overnight Federal Express this 20th day of August, 2007:

Rita B. Bush
Contracting Officer
NAVFAC Southwest
Specialty Center Contracts Core
Code RAQN0/Naval Base Ventura County
1205 Mill Road, Building 850
Port Hueneme, CA 93043-4347
Tel.: (805) 982-3927

Arthur F. Thibodeau
Counsel
Robert E. Little, Jr.
Associate Counsel
Department of the Navy
Naval Facilities Engineering Command
Attn: Code 00C
1322 Patterson Avenue, S.E.
Suite 1000
Washington Navy Yard, DC 20374-5065
Tel.: (202) 685-9120
Fax: (202) 685-1483

Glen Harris
Southern California Gold Products, Inc.
2350 Santiago Court
Oxnard, CA 93030-7932
Tel.: (805)988-0777

Richard L. Moorhouse