~~FILED UNDER SEAL~~

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

**AGREED-UPON REDACTED COPY**
**MAY BE MADE PUBLIC**

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

**AMERICAN DEFENSE SYSTEMS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA**

**Defendant.**

**Case No. 07-616C**

**(Judge Hewitt)**

**Electronically Filed On:**
**September 7, 2007**

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD UNDER RULE 52.1

Dated: September 7, 2007

Respectfully submitted,

/s/Richard L. Moorhouse
Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Blvd.,
Suite 1200
McLean, VA 22102
Tel.: (703) 749-1311
Fax: (703) 714-8308

OF COUNSEL:
David T. Hickey
Sean M. Connolly

# TABLE OF CONTENTS


I. STATEMENT OF THE CASE

II. STATEMENT OF THE QUESTIONS INVOLVED

III. STANDING

IV. STANDARD OF REVIEW

V. STATEMENT OF FACTS

VI. ARGUMENT

A. Technical Acceptability
B. Present Responsibility
C. Permanent Injunction

VII. CONCLUSION




~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

# TABLE OF AUTHORITIES

## Cases

210 Earll, LLC v. United States,
No. 06-360C, ______ Fed. Cl. _________ (2007) .......... 8

Bannum, Inc. v. United States,
404 F.3d 1346, 1355–57 (Fed. Cir. 2005) .......... 8, 9

Comprehensive Health Services, Inc. v. United States,
70 Fed. Cl. 700 (2006) .......... 8

CW Government Travel, Inc. v. United States,
63 Fed. Cl. 459 (2005) .......... 20

Dubinsky v. United States,
43 Fed.Cl. 243 (1999) .......... 17

Dynacs Engineering Company, Inc. v. United States,
48 Fed. Cl. 614 (2001) .......... 16

Firth Construction Co., Inc. v. United States,
36 Fed. Cl. 268 (1996) .......... 17

Four Points By Sheraton v. United States,
66 Fed. Cl. 776 (2005) .......... 8

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324, 1332 (Fed. Cir. 2001) .......... 9, 19

Info. Tech. & Applications Corp. v. United States,
369 F.3d 1312 (Fed. Cir. 2003) .......... 8

Information Sciences Corp. v. United States,
73 Fed. Cl. 70 (2006) .......... 16

Int'l Outsourcing Servs., LLC v. United States,
69 Fed. Cl. 40, 45-46 (2005) .......... 9

ITT Federal Services Corp. v. United States,
45 Fed.Cl. 174 (1999) .......... 17



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

JCN Construction Co. v. United States,
60 Fed. Cl. 400, 405 (2004) ..... 9

Keco Indus., Inc. v. United States,
203 Ct. Cl. 566 (1974) ..... 17

Pikes Peak Family Housing, LLC v. United States,
40 Fed. Cl. 673 (1998) ..... 9

SDS International v. United States,
48 Fed. Cl. 742 (2001) ..... 17

SDS International v. United States,
48 Fed. Cl. 759 (2001) ..... 17

Six v. United States,
71 Fed. Cl. 671 (2006) ..... 8

**Federal Statutes**

5 U.S.C. § 706 ..... 9

5 U.S.C. § 706(2)(A) ..... 9

10 U.S.C. 2304 (c) (2) ..... 10

28 U.S.C. § 1491(b)(4) ..... 9

31 U.S.C. 3553 (d) ..... 11

**Federal Regulations**

FAR 6.302 (c) (2) ..... 10

FAR 9.103 (b) ..... 18

FAR 9.104-1 ..... 18

FAR 9.104-1 (d) ..... 18



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| **AMERICAN DEFENSE SYSTEMS, INC.,** | **Case No. 07-616C** |
| **Plaintiff,** | **(Judge Hewitt)** |
| **v.** | |
| **THE UNITED STATES OF AMERICA** | **Electronically Filed On: September 7, 2007** |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD UNDER RULE 52.1**

## I. STATEMENT OF THE CASE

This is a bid protest action brought by American Defense Systems, Inc. ("ADSI") challenging the award of Contract No. N62473-07-C-4054 to Southern California Gold Products, Inc. under Solicitation No. N62473-07-R-4054 issued by the Department of the Navy on an urgent and compelling basis for the procurement of Armor Solution Kits (sometimes known as Construction & Military Equipment ("CME") kits) to provide add-on armor for various items of equipment used by Navy construction personnel operating in combat theaters including Iraq and Afghanistan. The operators of this equipment need armor protection from gunfire and explosive blasts. The armor kits provide protection for the top, sides, and bottom of the equipment and consist of both opaque armor plating as



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

well as transparent armor panels used for windshields and windows in the equipment cabs. Generally, the transparent armor has to have the same ballistic protection qualities as the opaque armor.

A key consideration of the effectiveness of the armor kits is the way in which they are attached to the equipment, either by welding or bolting. If the attachments are weak or not installed properly, the armor plating may be compromised or may fail in the event of a severe explosive blast. ADSI has developed proprietary technologies to ensure the proper attachment of the armor kits. ADSI believes that SCGP has misappropriated that technology to which SCGP had access when it was a subcontractor to ADSI and has brought an appropriate civil action against SCGP in federal court in New York. ADSI further believes that SCGP has used this misappropriated technology to enter the military armor solution kit market to compete directly against ADSI, especially with respect to the Navy's procurement of armor solution kits for its construction equipment. ADSI has brought the issue to the attention of the Navy previously and has asserted that SCGP is an unqualified offeror relying upon misappropriated technology in competing for awards. Beyond the misappropriation issue, ADSI has urged that no offer from SCGP can be accepted until SCGP's kits have been thoroughly tested because the lives of the equipment operators relying upon the armor kits may otherwise be at severe risk.

In early April, 2007, the Navy issued solicitation number N62473-07-R-4024 ("Solicitation -4024") for armor solution kits which included a requirement that all offered kits had to have been previously tested successfully by the U.S. Army's Aberdeen Test Center ("ATC"). This procurement resulted in an award to SCGP for 66 kits which



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

ADSI then immediately challenged in an agency-level protest to the Navy followed by a subsequent protest to the Government Accountability Office ("GAO"). In response to the GAO protest, in which ADSI alleged in principal part that SCGP was not a technically qualified offeror, the Navy announced that it would terminate the award to SCGP for unstated reasons, but then almost immediately issued Solicitation No. N62473-07-R-4054 ("Solicitation -4054" or 'the subject Solicitation") which is at the heart of this protest.

Solicitation -4054 was issued only to ADSI and SCGP on an urgent and compelling circumstances basis for 35 armor solution kits. ADSI received an award for 14 kits and SCGP an award for 21 kits. ADSI then protested the award to GAO on essentially the same grounds as it had raised previously concerning Solicitation -4024. Following GAO's dismissal of the protest, which ADSI asserts was not appropriate, ADSI now brings the matter before this Court seeking permanent injunctive relief.

## II. STATEMENT OF THE QUESTIONS INVOLVED

A. Was SCGP properly determined to have submitted a technically acceptable offer for any of the 21 armor kits for which it received an award under Solicitation -4054 even though its products have never been successfully tested?

B. Was SCGP properly determined to be a presently responsible contractor demonstrating both the technical capability to perform the contract it was awarded as well as a satisfactory record of integrity and business ethics?

C. Should the Court permanently enjoin the Navy from accepting any deliveries of armor kits under Solicitation -4054 from SCGP because those kits have never been successfully tested? And, should the Court permanently enjoin the Navy from awarding


~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

any future armor solution kit contracts to SCGP until it has a proper basis through test results to determine whether SCGP has submitted a technically acceptable offer?

## III. STANDING

ADSI has the requisite standing to bring this protest and to obtain relief because it is an actual offeror in this procurement and an awardee of 14 out of the Navy's 35 armor solution kit requirements. ADSI certainly has a direct economic interest in the procurement. See Comprehensive Health Services, Inc. v. United States, 70 Fed. Cl. 700 (2006). But for the Navy's improper actions at issue in this protest, ADSI would have had a "substantial chance" of winning the award of all 35 CME kits. See Four Points By Sheraton v. United States, 66 Fed. Cl. 776 (2005). ADSI therefore was materially prejudiced by the Navy's actions in selecting SCGP for the award of contract line items it was not entitled to receive either as an offeror submitting a technically acceptable proposal or more broadly as a responsible prospective contractor. See Info. Tech. & Applications Corp. v. United States, 369 F.3d 1312 (Fed. Cir. 2003).

## IV. STANDARD OF REVIEW

The standard of review for motions for judgment on the administrative record under RCFC 52.1 in bid protest cases before this Court is essentially the same as it had been under the standard of review for motions for summary judgment under the former RCFC 56.1 -- the Court reviews the existing administrative record and resolves questions of fact by assessing the weight of the evidence in the record. 210 Earll, LLC v. United States, No. 06-360C, ______ Fed. Cl. _________ (2007); Six v. United States, 71 Fed. Cl. 671 (2006); Bannum, Inc. v. United States, 404 F.3d 1346, 1355–57 (Fed. Cir. 2005).



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

Given the disputed and undisputed facts in the record, the Court will determine whether the plaintiff/protester has met its burden of proof to show by a preponderance of the evidence that the agency procurement decision giving rise to the protest was not in accordance with the law. Bannum, 404 F.3d at 1357. Factual questions must be resolved by reference to the administrative record, but the record must be clear and complete. Int'l Outsourcing Servs., LLC v. United States, 69 Fed. Cl. 40, 45-46 (2005). Thus, if the administrative record produced by the Government does not by itself contain sufficient evidence as to the propriety of the contract award or agency action in issue, the record may be appropriately supplemented as necessary. Pikes Peak Family Housing, LLC v. United States, 40 Fed. Cl. 673 (1998).

The Tucker Act provides jurisdiction for this Court to review an agency's procurement decisions by applying the standard prescribed by the Administrative Procedures Act ("APA"). 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706. That standard is whether the complained-of agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's procurement action will be reversed where "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." JCN Construction Co. v. United States, 60 Fed. Cl. 400, 405 (2004); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

## V. STATEMENT OF THE FACTS

1. ADSI filed earlier protests with the Navy and then GAO challenging an award



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

for 66 armor kits to SCGP under Solicitation No. N62473-07-R-4024.

2. In those protests, ADSI alleged that SCGP misappropriated ADSI's proprietary technical information and concepts and had no independent history of developing CME armor kits on its own. ADSI also alleged that SCGP's product in any event had not been successfully tested by ATC. AR, Tab 1, at 568.

3. The award to SCGP under Solicitation -4024 was then terminated by the Navy for unstated reasons. Id.; AR, Tab 5, at 442.

4. The subject Solicitation was then issued on June 5, 2007, to only ADSI and SCGP under the "urgent and compelling circumstances" exemption to full and open competition provided by the Competition in Contracting Act of 1984 ("CICA"), 10 U.S.C. 2304 (c) (2); FAR 6.302 (c) (2), for 35 armor solution kits. AR, Tab 1, at 569.

5. The kits are intended to provide both opaque and transparent armor protection to operators of the equipment against small arms and sniper fire, and especially from improvised explosive device ("IED") blasts. AR, Tab 8, at 699-702.

6. The subject Solicitation called for 35 kits to armor different items of construction equipment such as dozers, scrapers, cranes, and cement mixers. Id., at 699.

7. Because of the different vehicle/equipment types and configurations, the contractor would be required to design kits to armor the particular equipment item and then to install the armor kits on the equipment.

8. Solicitation -4054 contemplated that the kits would be awarded on a technically acceptable, lowest price basis. Id., at 722.

9. There was only a two-day turnaround time allowed by Solicitation -4054 (even


~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

as amended) to prepare and submit offers, and ADSI timely submitted its offer by the June 6, 2007 closing date. Id., at 679, et seq.

10. ADSI submitted the low price for 14 of the kits and SCGP submitted the low price for 21 kits. Awards were made to both firms on June 7, 2007. AR, Tab 8, at 596-7.

11. Shortly thereafter, ADSI filed a bid protest with GAO on June 11, 2007, alleging in material part that the contract award to SCGP was improper because SCGP was not a qualified offeror entitled to receive an award inasmuch as (1) its armor kit product was not developed independently, but rather reflected the misappropriation of ADSI's proprietary concepts and technical information during the time SCGP had been a subcontractor to ADSI; and (2) its product had never been successfully tested by ATC. GAO dismissed the protest on July 6, 2007 on the grounds that ADSI's protest was essentially a challenge to SCGP's responsibility as a prospective contractor, which GAO typically does not review under its bid protest function. AR, Tab 5, at 444-447.

12. Although the filing of the GAO protest would normally have resulted in the imposition of an automatic "stay" and suspension of further contract performance until GAO issued its decision, CICA, 31 U.S.C. 3553 (d), the Navy determined under that statutory authority on June 28 to proceed with performance notwithstanding the pending protest because of the same urgent and compelling circumstances that had caused it to limit the competition to only ADSI and SCGP. AR, Tab 7, at 587.

13. In its Determination and Findings ("D&F") document supporting the decision to "override" the CICA stay, the Navy *inter alia* stated that "[b]oth SCGP and ADSI were considered technically acceptable…" Id., at 584-586.



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

14. However, the Navy did no independent assessment of SCGP's technical acceptability with respect to its offer under the subject Solicitation, instead relying upon the ostensible technical evaluation it had performed earlier under Solicitation -4024. AR, Tab 7, at 568-9:

> "It had been determined during technical evaluation of the protested contract [awarded under Solicitation -4024] that both contractors possessed the technical knowledge and expertise to model and manufacture the armor solution kits. The Technical Representative met with the Contracting Officer and Contract Specialist on June 6, 2007...to evaluate the proposals in accordance [with] the [subject] Solicitation."

15. The contract awarded to SCGP under Solicitation -4024 which was the subject of protests by ADSI to both the agency and GAO has been terminated for unstated reasons. Id.

16. There is nothing in the record showing that the Navy affirmatively determined SCGP to be a presently responsible offeror under Solicitation -4054.

17. There is nothing in the record showing that the Navy ever considered ADSI's allegations regarding SCGP's misappropriation of its proprietary technology as the means by which SCGP was able to compete in armor solution kit procurements.

## VI. ARGUMENT

### A. Technical Acceptability

ADSI submits that because the prior procurement conducted under Solicitation -4024 did not result in a valid and lawful contract award -- if it were, the Agency would have no reason to terminate it -- any technical evaluation conducted under Solicitation -4024 is concomitantly invalid and provided no proper basis to make an award to SCGP


~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

under Solicitation -4054. Moreover, that earlier evaluation in and of itself was materially flawed.

It was a fundamental requirement of Solicitation -4024 that submitted proposals would be reviewed for technical acceptability. AR, Tab 1, at 1. It was also a fundamental requirement that both the opaque and transparent armor used in the offered armor solution kits meet the requisite level of ballistic protection confirmed by test documentation from ATC. Id., at 2. Offerors were clearly advised that the armor to be used in the kits must have been tested at ATC. AR, Tab 4, at 371. However, because it was subsequently learned that the ATC test data was classified, the Navy amended the terms of Solicitation -4024 to delete the test documentation requirement and instead asked offerors to provide:

> "...the date of ballistic testing of each material at ATC and [to] state the ATC tracking or reference number for testing, so that Govt. personnel can verify test results [and] name, telephone number and email address of a point of contact at ATC who can verify test results." AR, Tab 4, at 359.

In an e-mail communication to the Navy Contracting Officer on May 2, 2007, SCGP acknowledged that its transparent and opaque armor solutions had yet to be tested by ATC, although SCGP was awaiting a test date from ATC, but asserted that since the kits it was proposing under the subject Solicitation were the same as provided to the Army's Tank and Automotive Command ("TACOM") under earlier contracts, that SCGP was "certain that the solution will meet the requirements." AR, Tab 4, at 378.

However, the Navy was then advised by ATC that although the opaque and transparent armor materials used by ADSI had been tested for its ballistic protective



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

properties, the actual armor materials to be used by SCGP in its kits had not been tested. AR, Tab 4, 383. Moreover, ATC advised the Navy that ATC also needed to do "testing that addresses [the Navy's] particular threats as well as testing that addresses issues associated with integrating the particular materials onto a platform [*i.e.*, a vehicle or piece of equipment] need to be conducted." AR, Tab 4, at 381. ATC was explicit with the Navy what type of testing would be required:

> "…[ATC] would also want to look at how the opaque and transparent armor solutions are integrated into the platform. This would be done with ballistic exploitation testing which targets armor seams, small liner seams, armor attachment points, and other locations considered as potential vulnerabilities..." AR, Tab 4, at 382.

In summary, ATC has never tested SCGP's armor solution kits as actually installed on a vehicle or piece of equipment. Moreover, even more fundamentally, the opaque and transparent armor materials (the latter is made by and proprietary to only two companies, ADSI itself and Sierracin) used by ADSI in its own kits have been tested by ATC, but while SCGP has claimed its armor materials to be the same as those used by ADSI, SCGP's materials as used in its own kits actually have never been tested.

The Navy appears to have evaluated SCGP's proposal for technical acceptability before receiving this information from ATC, concluding in a summary of the technical evaluation meetings held on April 20 and 23, 2007, that both ADSI and SCGP were deemed to have submitted technically acceptable offers. It reached this conclusion even though ATC test documentation had not been provided due to the classified nature of the testing, as discussed above, because the armor materials proposed to be used were the same materials used under other Navy and TACOM armor solution contracts and had



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

been successfully tested previously at ATC. AR, Tab 1, at 41-44.

However, the Navy then concluded that this evaluation nonetheless was inadequately based and requested additional information from ADSI and SCGP by April 30 for purposes of determining technical acceptability. AR, Tab 1, at 49. This additional information, which apparently was the data necessary to confirm successful ATC testing absent the actual (classified) test documentation, was still deemed insufficient. Id. The Navy then convened an "urgent" meeting of the Evaluation Selection Board and the Source Selection Authority on May 8 "regarding acceptability of offerors[‘] submissions and justification for award to [SCGP]," at which time there was a "verbal exchange" of information resulting in a determination by "all parties" that both ADSI and SCGP "had met the technical requirements." Id. No further details of this May 8 meeting or the contents of the "verbal exchange" are provided in the record.

Because SCGP's actual armor kits have never been tested, and because the armor materials as used by SCGP in its own kits also have never been tested, the Navy had no rationale under either Solicitation -4024 or the subject Solicitation to determine that SCGP's offers were technically acceptable. To the extent the Navy argues that the opaque and armor materials to be used by SCGP have been used previously under other contracts and are the same as the armor materials ADSI submitted to ATC for testing, and which were successfully tested, the Navy overlooks one critical point.

As noted, the armor solution kits are composed of both opaque and transparent armor plating and panels. The transparent armor used in windshields and windows are made by only two companies, ADSI and Sierracin, and the technology is proprietary to


~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

each. The transparent armor submitted by ADSI to ATC for testing was produced by ADSI itself. Therefore, there can be no claim that the transparent armor used by SCGP is the "same" ATC-tested material used by ADSI because ADSI does **not** supply its own transparent armor to a competitor such as SCGP. Indeed, the record shows that SCGP uses transparent armor manufactured by Sierracin, the other source. AR, Tab 4, at 378. There is no evidence in the record to establish that the ballistic protection properties of Sierracin transparent armor are the "same" as ADSI transparent armor. Even the record of ATC's testing of Sierracin transparent armor is not clear, as expressed in an e-mail communication between the Navy's contracting officer and the SCGP production manager on May 2, 2007, in which the latter stated:

> "Sierracin has completed multiple successful tests at ATC, however, all tests have been vehicle related and not dedicated to just the transparent armor. Many independent test results have been supplied to support that the OIF level glass exceeds the contract requirements. We **will have** ATC results at the same time our opaque armor is tested." (Emphasis added.)

Clearly, even SCGP itself acknowledged that its transparent armor materials had not been tested by ATC by the time the Navy awarded the now-terminated contract to SCGP under Solicitation -4024.

It is well settled that a contracting officer abuses his/her discretion in not evaluating offers under the solicitation's stated evaluation factors when making a source selection decision. An award so tainted may be permanently enjoined by this Court, or the protester may otherwise be allowed its bid preparation costs. Information Sciences Corp. v. United States, 73 Fed. Cl. 70 (2006); Dynacs Engineering Company, Inc. v. United States, 48 Fed. Cl. 614 (2001). The function of the Court is generally not to


~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

second-guess the specific evaluation results reached by an agency unless clearly unreasonable or irrational. Rather, the Court's fundamental purpose is to ensure that the evaluation was conducted under the criteria and procedures set forth in the solicitation. See SDS International v. United States, 48 Fed. Cl. 742 (2001); SDS International v. United States, 48 Fed. Cl. 759 (2001).

Here, the record is clear that the evaluation was **not** conducted in accordance with the subject Solicitation's criteria since the Navy took no meaningful steps to determine that SCGP's offer was technically acceptable, even though that was one of the two main factors to be used in determining the successful offeror for any of the 35 armor solution kits. Stated evaluation and source selection criteria must be adhered to unless offerors are advised expressly that those criteria have been changed. ITT Federal Services Corp. v. United States, 45 Fed.Cl. 174 (1999); Dubinsky v. United States, 43 Fed.Cl. 243 (1999). Therefore, there was no reasonable basis for the Navy to award 21 kits to SCGP. By failing to follow the criteria set out in the subject Solicitation, the Navy not only violated the requirements of FAR Part 15 but abused the otherwise broad discretion the Solicitation may have given it to make an award decision. Any one of these failures is sufficient enough for ADSI to prevail in this case. See Keco Indus., Inc. v. United States, 203 Ct. Cl. 566 (1974). Since SCGP's offer was not meaningfully evaluated as technically acceptable, with no test data existing to support such a finding, the Navy made an unsubstantiated determination to that effect and a resulting invalid award. Firth Construction Co., Inc. v. United States, 36 Fed. Cl. 268 (1996).



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

**B. Present Responsibility**

Also, the administrative record contains no evidence that the Navy ever made other than a cursory determination of SCGP's "responsibility" to perform the contract. The Navy merely cited to SCGP's performance on other "projects and under Government contracts," but the record provides no details as to the actual review undertaken by the Navy. AR, Tab 1, at 573. In the circumstances here, given ADSI's strenuous assertions that SCGP misappropriated its technology and had an unproven armor product, that was not enough.

While the concept of a proposal's "technical acceptability" as discussed above focuses upon the offeror's commitment and approach to provide the required items in strict compliance with the stated specifications, without taking or seeking any deviations or exceptions, the concept of "responsibility" rather focuses upon the offeror's ability as a company to provide what it has promised to provide in that offer, *i.e.*, its ability to provide the necessary technology, skill, expertise, workforce, financing, and other resources and assets to successfully perform the contract. FAR 9.104-1. In addition, "responsibility" is a concept which also considers whether a company has a "satisfactory record" of integrity and business ethics. FAR 9.104-1 (d). The FAR is specific that a contracting officer must make a determination of "nonresponsibility" and deny an award "in the absence of information clearly indicating that the prospective contractor is responsible." FAR 9.103 (b).

A contracting officer's responsibility determination is necessarily subjective to a large extent, but the contracting officer does not have unfettered discretion in reaching it.


~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

The contracting officer simply cannot ignore information which indicates that the contractor is not responsible -- in short, there is a duty to investigate all of the facts independently. An affirmative determination of responsibility not supported by sufficient information will not be upheld by this Court. Impresa Construzioni, supra.

It is clear that, in soliciting SCGP for an offer under the subject Solicitation and in ultimately awarding SCGP 21 of the 35 armor solution kits, the Navy ignored and failed to "independently investigate" the negative information ADSI had levied against SCGP about the misappropriation of its proprietary technology and its concomitant lack of a history in producing armor solution kits, let alone ones that have been successfully tested for their ballistic protective capacity. Accordingly, the contracting officer abused his discretion and failed to comply with the requirements of FAR 9.103 (b) in making any award to SCGP. Id.

**C. Permanent Injunction**

SCGP's kits have never been shown to be successfully tested. This Court therefore should enjoin the Navy from accepting any deliveries from SCGP under its present contract and from awarding any future armor solution kit contracts to SCGP until it has a proper basis through test results to determine whether SCGP has submitted a technically acceptable offer, and until it has properly found and determined SCGP to be a presently responsible contractor. This Court will grant injunctive relief where the plaintiff establishes that: (1) it has achieved actual success on the merits; (2) it will suffer irreparable injury if injunctive relief is not granted; (3) the harm to plaintiff if an injunction is not granted outweighs the harm to the Government if an injunction is



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

granted; and (4) granting the injunction serves the public interest. No one factor, taken individually, is necessarily dispositive. A plaintiff, as ADSI has done here, must demonstrate its right to injunctive relief by clear and convincing evidence. CW Government Travel, Inc. v. United States, 63 Fed. Cl. 459 (2005).

ADSI succeeds on the merits because the record provides no refutation for its two grounds of original protest -- that the Navy made an improper award to an offeror which the Navy failed to determine had submitted a technically acceptable offer or was a presently responsible business organization. ADSI will clearly be irreparably harmed through lost and irreplaceable contract revenues unless the Court enjoins the Navy from allowing SCGP to continue to benefit from its misappropriation of ADSI's technology. The balance of harms clearly tilts in ADSI's favor because a grant of injunctive relief will not only protect ADSI's economic interests but will enable ADSI to fulfill the Navy's requirements by providing an armor solution kit whose materials have been successfully tested, thus clearly reducing the risk to Navy service personnel. Finally, the public interest is served because injunctive relief will not only preserve the integrity of the procurement process but will also ensure that the best armor protection is being provided to Navy service personnel.

## VII. CONCLUSION

For the foregoing reasons, ADSI respectfully requests that the Court grant its Motion for Judgment on the Administrative Record and the relief requested therein. The record shows that SCGP is not the proper awardee under the subject Solicitation, and that the Navy's actions in making award to an unqualified, nonresponsible offeror with an


~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~

unproven and untested product was a material violation of applicable law and regulation and deeply prejudicial to ADSI. The Navy should be enjoined from accepting any deliveries from SCGP; should be ordered to reaward all requirements under SCGP's present contract to ADSI; and should be enjoined from awarding SCGP any future armor solution kit contracts until such time as the Navy has a proper basis to determine SCGP is a qualified, technically acceptable, and presently responsible offeror.

Dated: September 7, 2007

Respectfully submitted,

/s/Richard L. Moorhouse

Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22101
Tel.: (703) 749-1311
Fax: (703) 714-8308
E-mail: moorhouser@gtlaw.com

Of Counsel:
David T. Hickey
Sean M. Connolly
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22101
Tel.: (703) 749-1300
Fax: (703) 749-1301



~~FILED UNDER SEAL~~
~~Protected Material To Be Disclosed Only In Accordance With U.S. Court of Federal Claims Protective Order~~