# In the United States Court of Federal Claims

No. 07-616 C

(E-Filed under seal: November 15, 2007)[1]

(E-Filed for publication: November 27, 2007)

| | |
|---|---|
| AMERICAN DEFENSE SYSTEM, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Post-Award Bid Protest; Motion to Dismiss; Technical Acceptability, Lowest Cost; Responsibility of the Contracting Officer; Availability of Injunctive or Other Relief When Contract is Complete |

Richard L. Moorhouse, McLean, VA, for plaintiff. David T. Hickey and Sean M. Connolly, of counsel.

Richard P. Schroeder, with whom were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Kathryn A. Bleecker, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. Arthur F. Thibodeau, Office of General Counsel, Department of the Navy, Ventura County, CA, of counsel.

## OPINION

HEWITT, Judge

[1] When this Opinion was filed under seal on November 15, 2007, the parties were afforded an opportunity to request redaction of protected material on or before November 26, 2007. No requests for redaction having been received, the Opinion is to be published as issued on November 15, 2007.

This is a post-award bid protest filed by American Defense Systems, Inc. (ADSI), a manufacturer of armor solution kits (armor kits), against the United States, acting through the Department of the Navy (Navy or defendant). Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative record under Rule 52.1 [of the Rules of the Court of Federal Claims (RCFC)] (Pl.'s Memo or plaintiff's Memo) 5-6. Plaintiff challenges an award to Southern California Gold Products, Inc. (SCGP) under a solicitation issued by the Navy. Id. at 5. The parties filed cross-motions for judgment on the administrative record in accordance with RCFC 52.1. Plaintiff's Motion for Judgment on the Administrative Record Under [RCFC] 52.1 (Pl.'s Mot. or plaintiff's Motion); Defendant's Response to Plaintiff's Motion for Judgment Upon the Administrative Record and Defendant's Cross-Motion (Def.'s Resp. or defendant's Response); Plaintiff's Response to Defendant's Cross-Motions and Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Judgment Upon the Administrative Record (Pl.'s Resp. or plaintiff's Response); Defendant's Motion to Dismiss (Motion to Dismiss) and Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Judgment Upon the Administrative Record (collectively, with the Motion to Dismiss, Def.'s Reply or defendant's Reply). Defendant filed its Motion to Dismiss after learning that SCGP had completed the contract that arose from the solicitation that is the focus of this bid protest. See Def.'s Reply 1. Plaintiff filed Plaintiff's Reply to Defendant's Motion to Dismiss (Pl.'s Reply or plaintiff's Reply) on October 25, 2007. The court held oral argument on the parties' cross-motions and on defendant's Motion to Dismiss on November 2, 2007. See Transcript of Oral Argument of Nov. 2, 2007 (Tr.). For the following reasons, Plaintiff's Motion is DENIED and the motion contained in defendant's Response is GRANTED. Defendant's Motion to Dismiss is GRANTED-IN-PART.

## I. Background[2]

ADSI challenges the award of Contract Number N62473-07-C-4054 (Solicitation) by the Navy to SCGP. Pl.'s Memo 5. The Solicitation called for the procurement of armor kits "to provide add-on armor for various items of equipment used by Navy construction personnel" in combat. Id. The Solicitation, which was sent on June 5, 2007, required two types of armor: opaque and transparent. Def.'s Resp. 7. Defendant explains that "[o]paque armor is essentially steel plating, while transparent armor is often called bullet-proof or ballistic glass." Id. at 7-8 (citing Administrative Record (AR) 654, ¶¶ 2.4.1, 2.4.2). The Solicitation was issued only to ADSI and SCGP under the "urgent and compelling circumstances" exemption to full and open competition required by the

[2]Facts relied on in this opinion and cited to a statement of facts or other filings of only one of the parties do not appear to be in dispute.

Competition in Contracting Act of 1984, 10 U.S.C. § 2304(c)(2), and called for thirty-five armor kits. Pl.'s Memo 10. Each armor kit represented a different line item in the Solicitation, and an offeror was permitted to bid on any or all of the line items. AR 655-63, 668.

The parties' arguments about the propriety of the Navy's conduct with respect to the Solicitation involve several prior procurements of armor kits, beginning with a solicitation issued in September 2005 by the U.S. Army Tank-Automotive and Armaments Command (TACOM). See Pl.'s Memo 9-12; Def.'s Resp. 3-7. TACOM issued solicitation W56HZV-05-R-0951 (TACOM Solicitation) for armor kits for certain construction equipment. AR 89-206. The TACOM Solicitation required offerors to use the materials listed in attachment 005 to the TACOM Solicitation because the armor kits "are designed to provide equipment operators with ballistic protection against small arms fire . . . and improvised explosive devices." AR 91; see also AR 199. Attachment 005 to the TACOM Solicitation provided that, for opaque armor materials, offerors were to use one of two options. AR 199. The first option provided for "3/8-inch thick Rolled Homogenous Armor (RHA), Class II, IAW MIL-A-12560 with a welded-on exterior appliqu[e] of 3/8-inch Structural Steel IAW ASTM A36." Id. If offerors chose the first option, the contractor was required to weld the two layers together "using a combination [of] plug welds and edge welds in a manner that will prevent separation of the layers during an IED [improvised explosive device] event." Id. The second option constituted the use of 2-inch thick aluminum armor. Id. With regard to transparent armor, attachment 005 to the TACOM Solicitation required that "[p]reviously tested and approved recipes from one or more of the following vendors" be used. Id. Two of the vendors listed were plaintiff and Sierracin Corporation (Sierracin). Id.

In February 2007, the Navy initiated a sole source contract for armor kits for construction equipment with SCGP. Id. at 480-512. The Navy hired SCGP as a sole source contractor because of "unusual and compelling urgency." Id. at 564 (citing 10 U.S.C. § 2304(c)(2)). Subsequently, this contract was modified to add additional work. Id. at 480-563. SCGP completed its performance under this contract on or about August 20, 2007. Id. at 448-479.

On April 4, 2007, the Navy issued solicitation N62473-07-R-4024 (Solicitation 4024) for armor kits. Id. at 1-4. The requirements in Solicitation 4024 were similar to those listed in the TACOM Solicitation but contained additional provisions regarding the levels of protection, sniper fire/small arms protection, and ballistics testing. See id. at 286-87. Solicitation 4024 also required offerors to provide data on ballistic testing performed for both the opaque armor and the transparent armor. Id. at 310-11. The data was to include statements by the vendor of the level of ballistic protection, documentation

of results of ballistic testing, identification of dates of ballistic testing, and contact information for the appropriate contact person to verify the test results. Id.

When the Navy did not receive the ballistic data that it had requested in Solicitation 4024, it followed up with the two offerors that had submitted proposals on Solicitation 4024, which were ADSI and SCGP. See AR 357-69; AR 372-79. The Navy discovered that the ballistic testing had not been conducted on the armor kits for any offeror, including ADSI and SCGP. Id. at 42-43, 380-83. Because neither offeror met the testing requirement, failure to meet the requirement was not treated as a deficiency. Id. at 42-43. The evaluation boards considered the offerors to be technically equal; however, SCGP received the award because its offered price was lower than that offered by ADSI. Id. at 41-44, 47-48. ADSI protested to the agency and then to the General Accounting Office (GAO). Id. at 21, 385-86. The agency questioned the award process upon recognition of defects in Solicitation 4024. Id. at 28-30. The agency then decided to cancel the award of Solicitation 4024 and re-compete the work between the same two offerors, ADSI and SCGP. Id. at 31-34, 675-78.

The Navy then issued the Solicitation that is at issue in this case. Id. at 649. The Solicitation differed from Solicitation 4024 in that it eliminated the requirement for the ballistic testing results. Compare AR 286-87 with AR 654. The Solicitation specifies that "[a]ward will be made on the basis of the lowest priced technically acceptable offer." AR 674. The Solicitation also states that

> The [g]overnment will evaluate pricing for each item both individually and using a combination of items[,] which together, result in the lowest overall price. Based on the results of this price evaluation, the [g]overnment may determine that either a single or multiple award of items . . . covered by this solicitation is in the [g]overnment's best interest.

Id. Defendant states that "no particular technical information was requested as part of the proposals" because "the competition was limited to the two companies [ADSI and SCGP] the [g]overnment considered able to fully perform the contract." Def.'s Resp. 7.

The Solicitation specifies thirty-five Construction and Material Equipment (CME) units for which immediate armoring solutions are required. AR 699. The CMEs include cranes, forklifts, bulldozers, and other related machinery. Id. The Solicitation sets forth the Armor Solution Specifications for each CME armor kit, delineating everything from the structure to the paint color of the armor kits. Id. at 700-02.

Plaintiff submitted its bid on June 6, 2007. AR 679. In its bid, plaintiff stated that it understood "that this is a new an[d] separate solicitation for [a]rmor [k]its for the [Navy] . . . from [Solicitation 4024]." Id. Plaintiff clearly understood the terms of the Solicitation because, when plaintiff submitted its bid, it also included the following statement: "The [m]ajor difference between [the Solicitation] as a new and separate solicitation from [Solicitation 4024] was the [r]emoval of the Opaque Ballistic Testing Requirements to be a qualified bidder." Id. at 679.

The evaluation of the offerors' proposals in response to the Solicitation was conducted by the Technical Representative, Contracting Officer, and Contract Specialist (together, the Source Selection Authority (SSA)). Id. at 569. The Technical Representative reviewed the proposals submitted by ADSI and SCGP and found them "to be in compliance [with the Solicitation] and determined [them] to be technically acceptable." Id. at 570. The Technical Representative concluded that "ADSI and SCGP both submitted acceptable proposals[,] which meet all the technical requirements of the [Solicitation]," id., and he recommended "multiple award based on lowest price," id.

The SSA conducted its price analysis of the proposals by reviewing the individual line item prices submitted by the offerors. The SSA found that "prices are considered to be fair and reasonable for both contractors." Id. at 572. The SSA created a chart to identify the CME units as to which ADSI submitted the lower price and the CME units as to which SCGP submitted the lower price. See id. at 572-73. Based on the prices, the SSA recommended that the armor kits for the fourteen CME units for which ADSI submitted the lower price be awarded to ADSI, and that the armor kits for the twenty-one CME units for which SCGP submitted the lower price be awarded to SCGP. Id. at 573. The SSA concluded that awarding the contract in this way "would result in a total award of $1,831,122.06," which "would be in the best interest of the Government." Id.

Plaintiff filed a bid protest with the Government Accountability Office (the GAO) on June 11, 2007. Pl.'s Memo 11; Def.'s Resp. 9. On July 6, 2007, the GAO dismissed plaintiff's protest. AR 444-47. Plaintiff argued before the GAO that the requirements of the Solicitation were "inadequate and inherently vague," that the Solicitation was not for a "commercial item," and the requirements from Solicitation 4024 should be applied in the evaluation of the Solicitation. Id. at 445. The GAO dismissed these claims, stating that "[t]hese contentions are untimely raised as they are based on alleged improprieties in the [Solicitation]." Id. The GAO stated further that "a protest based on alleged improprieties in a solicitation must be filed prior to bid opening or the time established for receipt of proposals." Id. (citing 4 C.F.R. § 21.2(a)(1)). Plaintiff also asserts that it was "the only qualified offeror that could receive an award because SCGP [was] not capable of performing . . . [the] requirements [of the Solicitation], inasmuch as it [SCGP]

has not previously supplied add-on armor kits, its armor has not been tested, and it is using ADSI's proprietary solutions." Id. The GAO dismissed these claims also, finding that "[w]here, as here, award under a [solicitation] is based on price, no technical proposals are solicited, and the offeror does not take exception to the . . . requirements [of the solicitation], challenges to the offeror's acceptability or compliance with the . . . requirements [of the solicitation] are matters that concern whether the offeror is responsible because they related to whether the offeror is capable of performing the contract to which it has committed by submitting its offer." Id. at 446. The GAO concluded that the specifications in the Solicitation "serve the sole purpose of describing the items offerors are to agree to supply if they are awarded the contract, and are not considered definitive responsibility criteria." Id. at 447. The GAO therefore dismissed plaintiff's protest on July 6, 2007. Id. at 444, 447.

On August 20, 2007, plaintiff filed its Complaint (Compl. or Complaint) in this court and moved for a preliminary injunction and temporary restraining order. Compl. 1; Docket No. 3, 4. The court held a telephonic status conference with the parties on August 21, 2007 and established a schedule for the parties' briefings on their cross-motions for judgment on the AR. See Order of Aug. 21, 2007. Defendant filed the AR on August 31, 2007. See Docket No. 15-21. Plaintiff filed its Motion on September 7, 2007. Pl.'s Mot. 1. Defendant filed its response and cross-motion on September 28, 2007. Def.'s Resp. 1. Plaintiff filed its reply on October 8, 2007. Pl.'s Resp. 1. Defendant filed its reply on October 17, 2007, which also contained defendant's Motion to Dismiss. Def.'s Reply 1. Plaintiff filed its response to defendant's Motion to Dismiss on October 25, 2007. The court held oral argument on the cross-motions and defendant's Motion to Dismiss on November 2, 2007.

## II. Discussion

### A. Bid Protest Standards of Review

The Tucker Act, as amended by the Administrative Disputes Resolution Act (ADRA), 28 U.S.C. § 1491(b) (2004), confers jurisdiction on this court

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).

The court reviews a bid protest action under the standard set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706 (2004). NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); see 28 U.S.C. § 1491(b)(4). The APA provides that an agency's decision is to be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). See also Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). "[T]he court implements this APA standard by applying the standard as previously interpreted by the district court[] in [Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970)]."[3] Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004).

As a general rule, when considering motions for judgment on the administrative record within the context of a bid protest proceeding, the court focuses its review on "'the administrative record already in existence.'" Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States (Al Ghanim), 56 Fed. Cl. 502, 508 (2003) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam)). The force of the general rule that the court focuses its review on the administrative record already in existence has been strengthened both by changes in the RCFC and related Federal Circuit precedent. Effective June 20, 2006, the court adopted RCFC 52.1 to govern the filing and other aspects of proceedings to review the administrative record. See RCFC 52.1. The Rules Committee explained the rationale for RCFC 52.1 as follows:

> The rule replaces an earlier rule, RCFC 56.1, that applied certain standards borrowed from the procedure for summary judgment to review of an agency decision on the basis of an administrative record. That incorporation proved to be confusing in practice because only a portion of the summary judgment standards were borrowed. Summary judgment standards are not pertinent to judicial review upon an administrative record. See Bannum, Inc. v. United States [(Bannum)], 404 F.3d 1346, 1355-57 (Fed. Cir. 2005). Specifically, the now repealed Rule 56.1 did not adopt the overall standard that summary judgment might be appropriate where there were no genuine issues of material fact. See RCFC 56(c). Nonetheless, despite this omission, parties, in moving for judgment on the administrative record under the prior rule, frequently would contest whether the administrative

[3] In Scanwell, the circuit court upheld the district court's review of government procurement decisions under the APA. See Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859, 874-75 (D.C. Cir. 1970).

> record showed the existence of a genuine dispute of material fact. To avoid this confusion, the new rule omits any reference to summary judgment or to the standards applicable to summary judgment.
>
> . . . .
>
> The standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases. The rule does not address those standards or criteria.

RCFC 52.1 (Rules Committee Note).

As the Rules Committee Note states, RCFC 52.1 responded in part to the Federal Circuit's 2005 Bannum decision, where that court explained that RCFC 56.1, the predecessor rule, had in fact contemplated "trial on a paper record, allowing fact-finding by the trial court." Bannum, 404 F.3d at 1356. The Federal Circuit found that, in the context of a bid protest action, "judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record." Id. The Bannum court found support for its conclusion in the text of the Administrative Disputes Resolution Act (ADRA), 28 U.S.C. § 1491(b) (2000):

> The statute conferring the Court of Federal Claims's jurisdiction over bid protests expressly requires the trial court to give "due regard" to "the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3). Proceeding under RCFC 56.1 merely restricts the evidence to the agency record, as may be supplemented consistent with RCFC 56(a) or (b).[4]

Bannum, 404 F.3d at 1356 (footnote added).

The Federal Circuit has stated that, under the APA standard applied in Scanwell, and now under the ADRA, "'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Banknote Corp. of Am., Inc., 365 F.3d at 1351 (quoting Impresa, 238 F.3d at 1332). When challenging a procurement on the ground of a regulatory violation, the protester "'must show a clear and prejudicial violation of [the] applicable statutes or regulations.'" Id. (quoting Impresa, 238 F.3d at 1333). The

---

[4]The text of superseded RCFC 56.1 permitted supplementation only "by stipulation or by court order." RCFC 56.1(a) (abrogated June 20, 2006).

protester must also "show that there was a 'substantial chance' [that] it would have received the contract award absent the alleged error." Id. (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)). Therefore, "an agency's procurement decisions will be upheld unless shown to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Process Control Techs. v. United States, 53 Fed. Cl. 71, 75 (2002) (quoting 5 U.S.C. § 706(2)(A)). Also relevant here is the decision of the Court of Appeals for the Federal Circuit in Blue & Gold Fleet, L.P. v. United States (Blue & Gold Fleet), 492 F.3d 1308, 1313 (Fed. Cir. 2007), which held that "a party who has the opportunity to object the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."

B. Standing

Standing to bring a protest as an "interested party" under the ADRA is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001). The Federal Circuit has defined "interested party" further as a party that has "greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." Info. Tech. & Applications Corp. v. United States (Info. Tech.), 316 F.3d 1312, 1319 (Fed. Cir. 2003). "The term 'interested parties' excludes those who did not submit proposals, bidders who withdrew from a solicitation, and offerors who were not competitively ranked for award." Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 230, 232 (2006) (citing Impresa, 238 F.3d at 1334).

As one of two bidders approached by the Navy to submit proposals to the Solicitation, and having been awarded, in part, the contract from that Solicitation, the court finds that ADSI has standing to challenge the Navy's evaluation of the offerors' proposals in response to the Solicitation.

C. Defendant's Motion to Dismiss

Defendant urges the court to dismiss plaintiff's lawsuit because, it argues, the case is moot. Def.'s Reply 3-5. Defendant states that "all [twenty-one] units ordered from SCGP under [the contract from the Solicitation] now 'have been inspected, accepted, and delivered to the Navy.'" Id. at 2 (citing Def.'s Reply, Exhibit 1 (Decl. of Carolyn M. Contreras (Contreras Decl.) 1). Defendant further states that "SCGP 'has fully performed the contract and the request for final payment has been approved and forwarded for

transfer of the remaining contract funds to SCGP.'" Id. (citing Contreras Decl. 1). Accordingly, defendant argues that this protest should be dismissed because plaintiff's "request that the [c]ourt enjoin SCGP's further performance and order the Navy to award to ADSI all SCGP's remaining kits is moot." Id. Defendant also argues that "ADSI's request for an injunction regarding hypothetical future solicitations is premature and outside this [c]ourt's jurisdiction," id., and that the court "lacks jurisdiction to award bid and proposal preparation costs, court costs, attorney fees, or any other monetary relief," id.

Plaintiff responds that "the controversy in this procurement over the Navy's failure to determine SCGP's technical competence did not end with" SCGP's completion of the contract that derived from the Solicitation. Pl.'s Reply 5. Plaintiff states that "ADSI maintains its position that the Navy failed to determine whether SCGP's product is technically acceptable to meet the requirements of [the Solicitation] . . . to provide full and complete armoring protection for the entire vehicle and its operators." Id. at 6. Although plaintiff cites no case law to support its claim that its bid protest is not moot, plaintiff maintains that the court

> has the jurisdiction and the power to grant several possible forms of effective declaratory or injunctive relief regarding the contract award including: (1) declaratory relief ordering the Navy to return all SCGP-delivered [armor] kits not already deployed in combat theaters to SCGP until they are properly tested; (2) injunctive relief enjoining the Navy from awarding future contracts to SCGP until its [armor] kits are properly tested and SCGP is determined to be technically acceptable; (3) declaratory relief ordering the Navy to ensure that [armor kits] delivered to the field meet all safety and protective requirements, as affixed to the vehicles, by proper testing; or (4) awarding ADSI its bid and proposal costs and attorneys' fees.

Id. at 12.

Under Article III of the United States Constitution, the power of the judiciary "extends only to cases or controversies." Powell v. McCormack, 395 U.S. 486, 496 n.7 (1969); see U.S. Const. art. III. Although the United States Court of Federal Claims was established under Article I of the Constitution, the court "traditionally has applied the case or controversy requirement [of Article III] unless jurisdiction conferred by Congress demands otherwise." Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 657 (2003) (quoting Mass. Bay Transp. Auth. v. United States (Mass. Bay), 21 Cl. Ct. 252, 257-58 (1990)) (alteration in Commonwealth Edison). Based on the "case or controversy requirement," id., the court lacks jurisdiction to consider the merits of a moot case, see

Powell, 395 U.S. at 496 n.7. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. at 496; accord Rice Servs., Ltd. v. United States, 405 F.3d 1017, 1019 n.3 (Fed. Cir. 2005); Lion Raisins, Inc. v. United States, 69 Fed. Cl. 32, 35 (2005) (dismissing claims on ground of mootness in bid protest context).

Rule 12(b)(1) of the RCFC governs dismissal of a claim for lack of subject matter jurisdiction. See RCFC 12(b)(1). In ruling on a Rule 12(b)(1) motion to dismiss, the court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974)). However, plaintiff, as the non-moving party, bears the burden of establishing jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

The question before the court is whether a case or controversy exists within the bid protest context when the contract arising from the Solicitation has been completed. The court in Forestry Surveys & Data v. United States (Forestry), 44 Fed. Cl. 485 (1999), addressed a similar question in a case that involved a timber company and the Department of Agriculture. The Forestry plaintiff was a losing bidder in defendant's solicitation for a contract to perform a timber stand exam. Forestry, 44 Fed. Cl. at 487-88. The Forestry plaintiff filed a post-award bid protest and requested that the court terminate the awarded contract. Id. The court held that "the issue is clearly moot" because "[i]t is well-established that when a contract has been substantially completed, it is impossible, or at the least imprudent, for the court to order that the contract be rebid to a more desirable bidder." Id. at 491.

Several courts of appeals have similarly concluded that, if a contract has been substantially completed, there is no justification to re-award the contract to another bidder. In Gull Airborne Instruments, Inc. v. Weinberger (Gull), 694 F.2d 838 (D.C. Cir. 1982), the Court of Appeals for the District of Columbia Circuit held that, if the winning bidder's contract performance satisfactorily fulfills the government's requirements, "there is no justification for re-awarding the contract to a more deserving bidder." Gull, 694 F.2d at 846. Gull involved a contract award by the Navy to the winning bidder for the procurement of fuel quantity test sets and data. Id. at 840. The Gull plaintiff was ranked second in the bidding process and "filed suit in federal district court, alleging that both the Navy's award and its administration of the contract were illegal and asking that further performance be enjoined." Id. "The district court dismissed the case, finding that

[plaintiff] had standing to protest the contract's . . . award but that its request for injunctive relief was barred by the . . . doctrine of laches." Id. The D.C. Circuit remanded the case for a determination of whether the case warranted dismissal on the grounds of mootness, directing the district court to determine whether or not the contract had been substantially performed and, if it had, directing the district court to find plaintiff's request for injunctive relief moot. Id. at 846.

The Courts of Appeals for the Sixth and Ninth Circuits also have held that a losing bidder for a contract is not entitled to injunctive relief when the contract is substantially complete. The Sixth Circuit dismissed as moot plaintiff's claim for injunctive relief in Owen of Georgia, Inc. v. Shelby County, 648 F.2d 1084 (6th Cir. 1981). That case involved a losing bidder for a municipality's solicitation for a builder for the structural steel portion for a county building. Id. at 1086. The court held that "[i]t is now too late for injunctive relief to be effective because at oral argument we were informed that construction [of the county building] was substantially complete. Accordingly, we dismiss as moot [plaintiff's] claims for injunctive relief." Id. at 1094. In Dan Caputo Co. v. Russian River County Sanitation District, 749 F.2d 571 (9th Cir. 1984), the court held that plaintiff, who had previously constructed a sewage treatment system for defendant, could not enjoin defendant from awarding a contract to a third-party to correct alleged defects in plaintiff's construction because the corrective work contracts "have been awarded and by now the work under them has been completed." Dan Caputo, 749 F.2d at 574. The court remanded the case to the district court, instructing the district court that plaintiff's "challenge to the bid solicitation be dismissed as moot." Id.

Defendant informed the court on October 17, 2007 that the contract arising from the Solicitation had been completed by SCGP. Def.'s Reply 2. Defendant included as an exhibit to its Reply a declaration by Carolyn M. Contreras, who identifies herself as "a contract specialist" in the Navy. Def.'s Reply, Ex. 1 (Contreras Decl.). Specifically, defendant stated in its Reply that "all [twenty-one] units ordered from SCGP under contract [from the Solicitation] now 'have been inspected, accepted, and delivered to the Navy.'" Id. (citing Contreras Decl.). Ms. Contreras stated in her declaration that the units ordered from SCGP "have been inspected, accepted and delivered to the Navy," and that SCGP "has fully performed the contract and the request for final payment has been approved and forwarded . . . for transfer of the remaining contract[']s funds to the contractor." Id.

Because the contract arising from the Solicitation is complete, the court finds that plaintiff's request to enjoin SCGP from further performance on that contract is MOOT. Defendant's Motion to Dismiss, however, requests that plaintiff's entire Complaint be dismissed. Def.'s Reply 1. The court does not agree. The ADRA contemplates that a

court may award one or more of a variety of remedies: declaratory relief, injunctive relief, and monetary relief that is limited to bid preparation and proposal costs. 28 U.S.C. § 1491(b)(2). In its Complaint, plaintiff requested, in addition to injunctive relief, "damages, including, but not limited to, its bid and proposal preparation costs" and its "costs and attorneys' fees incurred in this action." Compl. 7. Bid preparation and proposal costs would still be available to plaintiff under the ADRA if plaintiff were to prevail on the merits. The United States Court of Appeals for the Federal Circuit has held that "a losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the [g]overnment's consideration of the proposals submitted was arbitrary or capricious." E.W. Bliss Co. v. United States, 77 F.3d 445, 447 (Fed. Cir. 1996); see also Gentex Corp. v. United States, 58 Fed. Cl. 634, 656 (2003) (holding that "a losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the [g]overnment's consideration of the proposal submitted was arbitrary or capricious or in violation of applicable statute or regulation."); PGBA, LLC v. United States, 60 Fed. Cl. 196, 222 (2004) (holding that a losing bidder may recover costs associated with preparing its unsuccessful proposal if it can establish that the government's consideration of the proposal submitted was arbitrary or capricious). Defendant's briefing cites no authority to contradict the view that the court may award bid preparation and proposal costs even when it denies injunctive relief. See Def.'s Motion to Dismiss passim. Accordingly, the court now considers the parties' cross-motions for judgment on the AR.

### D. Plaintiff's Motion for Judgment on the Administrative Record

#### 1. Technical Acceptability

In support of its motion for judgment on the AR, plaintiff first argues that "any technical evaluation conducted under Solicitation [] 4024 is concomitantly invalid and provided no proper basis to make an award to SCGP under [the] Solicitation." Pl.'s Memo 12-13. Claiming that "[i]t was a fundamental requirement of Solicitation . . . 4024 that submitted proposals would be reviewed for technical acceptability," id. at 13, plaintiff argues that the SSA erred in determining that SCGP submitted a technically acceptable offer because testing on SCGP's armor kits was not conducted by defendant's testing center, id. at 14. Thus, plaintiff concludes that "the Navy had no rationale under either Solicitation [] 4024 or the subject Solicitation to determine that SCGP's offers were technically acceptable." Id. at 15.

As an initial matter, the court notes that it can only review the evaluation process arising from the Solicitation that is the subject of this protest and not from previous solicitations that are not before the court at this time. Thus, the sequence of events that

followed the Navy's distribution of Solicitation 4024 is irrelevant to the court's examination of the Solicitation for this case. The contract that arose from Solicitation 4024 was terminated, so any issues regarding the evaluation of Solicitation 4024 are irrelevant. Further, as this court noted in Bannum, Inc. v. United States, "[j]udicial review of agency procurement decisions is extremely limited." 56 Fed. Cl. 453, 457 (2003) (citation omitted). The court must uphold an agency's decision if there is a reasonable basis for the agency's action because a reviewing court cannot substitute its judgment for that of the agency. Id. A reasonable basis for the agency decision "requires a rational connection between the facts of the situation and the decision made." Crux Computer Corp. v. United States, 24 Cl. Ct. 223, 226 (1991).

The Solicitation outlines "the minimum technical requirements to produce an armor solution for [CMEs] used to support Operation Iraqi Freedom . . . and Global War on Terrorism." AR 651. There is no requirement for additional testing of the bidders' products. See AR 649-74. The Solicitation does not require the submission of technical proposals. Id. The only reference to product testing within the Solicitation is in section 2.4.2.4, which states: "[o]nly transparent armor tested at Army Test Center (ATC) from the vendors, [ADSI] or Sierracin Corp., shall be used in this contract." AR 654 (emphasis added). Plaintiff claims that the armor kits provided by ADSI include transparent armor from ADSI that was tested by ATC but that "while SCGP has claimed its armor materials to be in the same as those used by ADSI, SCGP's materials as used in its own kits actually have never been tested." Pl.'s Memo 14.

The proposal submitted by SCGP in response to the Solicitation does not contain any language about testing SCGP's materials. AR 635-48. Rather, the proposal comprises a photocopy of the "Statement of Work" section of the Solicitation followed by a listing of each piece of CME equipment for which the Navy seeks armor kits and the prices proposed by SCGP for each armor kit. Id. at 637-48. ADSI's proposal is exactly the same: a photocopy of the "Statement of Work" section of the Solicitation followed by a listing of each piece of CME equipment for which the Navy seeks armor kits and the prices proposed by ADSI for each armor kit. Id. at 625-34. Neither proposal contains any information about testing because the Solicitation did not require it. See id. at 649-74. In particular, the only reference to testing within the Solicitation is directed to contract performance, AR 654 (stating that "only transparent armor tested at . . . shall be used"). The Solicitation does not identify testing as a criterion for evaluation. AR 649-74. In its "Justification and Approval to Procure Using Other Than Full and Open Competition" memorandum (Justification Memo), the Navy stated that the Solicitation was made available only to two offerors, ADSI and SCGP, because they "are the only known companies that possess the technical knowledge and expertise to initially model and manufacture [thirty-five] urgent armor solution kits . . . within [seventy-five] days of

contract award." Id. at 676. Because the Navy solicited proposals only from ADSI and SCGP on the basis that it deemed those companies capable of performing the contract, it follows that the Solicitation did not require that the offerors submit information regarding the testing of their equipment. Indeed, upon evaluation, both proposals were deemed technically acceptable. Id. at 570.

The court finds that whether the opaque armor in the kits submitted by ADSI or SCGP had been tested has no bearing on this acquisition because there was no requirement for such testing in the Solicitation. If plaintiff is alleging that the Solicitation was defective because it did not include a requirement for such testing - something that was known to ADSI at the time that it submitted its offer, AR 623-34 (ADSI submitting a photocopy of the requirements of the Solicitation, none of which required testing, with its proposed prices) - its protest should have been brought before the close of the bidding process. As set out above in Part I, ADSI was aware of the terms of the Solicitation prior to "the close of the bidding process" because it acknowledged the terms in writing to the Navy. AR 679-83; see Blue & Gold Fleet, 492 F.3d at 1313 (holding that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."). ADSI makes no argument that it had no "opportunity to object." See Blue & Gold Fleet, 492 F.3d at 1313. On these facts, plaintiff could not credibly so argue. Having failed to object prior to the close of the bidding process, plaintiff waived its objection to the specifications of the Solicitation. See id.

Plaintiff's argument regarding SCGP's materials is a contract administration issue, not a problem of contract procurement. Contract administration "includes all relationships between the government and the contractor that arise out of contract performance." J. Cibinic, et. al., Administration of Government Contracts 1 (4th ed. 2006). Contract procurement, on the other hand, is the initial "[p]rocurement of goods and services by the United States Government." J. Cibinic & R. Nash, Formation of Government Contracts 1 (3d ed. 1998). This court's bid protest jurisdiction addresses contract procurement only. That is, the court has jurisdiction to determine only whether the contract bidding and evaluation processes were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, the SSA determined that both ADSI and SCGP submitted technically acceptable proposals. AR 570. Contract award was then based on lowest price. Id. Because the SSA determined that SCGP and ADSI met the technical criteria of the Solicitation, and because the SSA followed the evaluation criteria set forth in the Solicitation by then making the award based solely on lowest price, see id. at 572-73, the court cannot set

aside the contract award on the basis that plaintiff believes that SCGP's anticipated performance did not or could not meet the Navy's criteria.

2. Responsibility Determination of the Contracting Officer

Plaintiff next argues that the Contracting Officer (CO) breached his responsibility set forth by FAR 9.103(b) because "the Navy ignored and failed to 'independently investigate' the negative information ADSI had levied against SCGP." Pl.'s Memo 19. Plaintiff cites the Federal Circuit's decision in Impresa to support its argument that "[a]n affirmative determination of responsibility not supported by sufficient information will not be upheld" by the court. Id. (citing Impresa).

The FAR provides that "[n]o purchase or award shall be made unless the [CO] makes an affirmative determination of responsibility." 48 C.F.R. § 9.103(b) (2006). In making that determination, the CO must determine that the offeror has "a satisfactory record of integrity and business ethics." Id. at § 9.104-1(d). Further, "[i]n the absence of information clearly indicating that the prospective contractor is responsible, the [CO] shall make a determination of nonresponsibility." Id. at § 9.103(b). The CO is not required to explain the basis for her responsibility determination. See id.

The Court of Appeals for the Federal Circuit set forth the standard for reviewing decisions of a CO in a bid for a government contract in Impresa, 238 F.3d at 1332. In that case, plaintiff was a losing bidder to provide maintenance, groundskeeping, janitorial, and other services to a United States Navy base in Italy. Id. at 1327. The winning bidder was JVC, a joint venture comprised of three companies. Id. Prior to the Navy's request for proposals for that contract, an Italian court had found the principal of two of the companies that comprised JVC guilty of bid rigging and using Mafia ties to intimidate competitors. Id. at 1327-28. The third company within JVC was led by the brother-in-law of the convicted principal. Id. at 1328. The Impresa plaintiff filed a bid protest against the United States, claiming, among other things, that the CO had made an arbitrary and capricious responsibility determination when it awarded the contract to JVC. Id. at 1329. The Federal Circuit held that an "agency decision is entitled to a presumption of regularity" and that "[b]ecause of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious." Id. at 1338 (citations omitted). Nevertheless, the court found that, based on the criminal convictions and evidence linking the convicted principal to JVC, which contradicted defendant's arguments that there no longer was any connection, the court found that "this is one of those rare cases in which an explanation is required." Id.

Plaintiff bears the burden of proof to demonstrate that the Navy evaluated the offerors' proposals and made a contract award in an "arbitrary and capricious" manner. 5 U.S.C. § 706; Impresa, 238 F.3d at 1333. The CO has wide discretion in determining responsibility and in determining the amount of information required to make the determination. Impresa, 238 F.3d at 1334-35 (holding that "[c]ontracting officers are 'generally given wide discretion' in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination" (quoting John C. Grimberg Co. v. United States, 185 F.3d 1297, 1303 (Fed. Cir. 1999))); see also Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002). The FAR does not require an explanation by the CO when the CO determines the offeror to be responsible: "The [CO's] signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract." 48 C.F.R. § 9.105-2(a)(1); see also id. at § 9.103(b).

In this case, the Navy reviewed the work histories of ADSI and SCGP, checked the government's excluded parties list, and reviewed the required representations and certifications submitted by the offerors. AR 573. In its Justification Memo, the Navy included the certification required by FAR 6.303-2(b), 48 C.F.R. § 6.303-2(b), as to the technical and manufacturing ability of the two offerors, AR 590, 592. Further, the Navy had successfully procured armor kits from SCGP in the past. Id. at 448-79. From March 13, 2007 up to June 7, 2007, the date of the award contested here, the Navy had accepted a number of armor kits manufactured by SCGP that arose from a sole source contract. See id. FAR 9.105-1(c) states that the CO "shall consider relevant past performance information" when determining the responsibility of an offeror. 48 C.F.R. § 9.105-1(c).

Plaintiff nevertheless argues that "SCGP has misappropriated that technology [used to ensure the proper attachment of armor kits] to which SCGP had access when it was a subcontractor to ADSI." Pl.'s Memo 6. Plaintiff filed a separate suit against SCGP on this issue in federal court, id., but it has since been dismissed, Tr. 41:15-17. Plaintiff claims that it "brought the issue to the attention of the Navy previously and ha[d] asserted that SCGP is an unqualified offeror relying upon misappropriated technology in competing for awards." Pl.'s Memo 6. In relation to this suit, plaintiff argues that the Navy's alleged failure to "independently investigate" SCGP amounts to the an abuse of discretion by the CO and failure to comply with the requirements of FAR 9.103(b) as interpreted by the Federal Circuit in Impresa. Pl.'s Memo 18-19.

The court views the circumstances in this case as differing significantly from those in Impresa. Impresa involved known criminal activity by the leader of the winning bidder. Here, plaintiff alleges civil wrongdoing, namely that SCGP misappropriated technology from ADSI. A conviction on criminal charges is a materially more serious

matter than an allegation of an unfair business practice which remains to be established at trial.[5] The court does not believe it is reasonable to equate plaintiff's allegation of civil wrongdoing to the criminal conviction of the principals in Impresa. When questioned by the court as to the existence of any case that had, following Impresa, found similarly egregious circumstances under which it was appropriate for the court to disturb the CO's exercise of its discretion in determining an offeror's responsibility, neither plaintiff's nor defendant's counsel was able to identify such a case, Tr. 37:13-38:25; 58:21-59:25, and the court is aware of none.

Taking into consideration the provisions of the FAR, which give wide discretion to the CO, and the high bar set by the Federal Circuit in disturbing that discretion in Impresa, the court finds that the CO in this case did not breach his obligation under FAR 9.103 or 9.104 to make a determination of responsibility or to independently investigate the claims made by plaintiff against SCGP. The court is satisfied that the Navy's review of the offerors' work histories, AR 573, the Navy's certification that the offerors' proposals were technically acceptable, AR 590, 592, and SCGP's performance of an earlier contract with the Navy, in which the Navy accepted the goods delivered by SCGP, AR 448-79, provided the CO with the information necessary to support the CO's discretion in determining that SCGP is a responsible offeror. The court does not agree that the Navy's determination of SCGP's responsibility was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

### 3. Plaintiff's Request for an Injunction

The final prong of plaintiff's argument urges this court to "enjoin the Navy from accepting any deliveries from SCGP under its present contract and from awarding any future armor solution kit contracts to SCGP until it has a proper basis through test results to determine whether SCGP has submitted a technically acceptable offer, and until it has properly found and determined SCGP to be a presently responsible contractor." Pl.'s Memo 19.

As discussed in Part II.A of this Opinion, the Tucker Act grants this court the jurisdiction to hear bid protests. See Part II.A. The court focuses its review on the administrative record associated with the particular solicitation at the center of the bid protest. See Bannum, 404 F.3d at 1356; Al Ghanim, 56 Fed. Cl. at 508; RCFC 52.1 (Rules Committee Note). The court notes that it can review only the evaluation process arising from the Solicitation and not from previous solicitations that are not before the

---

[5]At oral argument, plaintiff's counsel informed the court that ADSI's lawsuit against SCGP in federal district court was dismissed. Tr. 41:15-17.

court at this time. See Part II.D.1. The court has found no violations of plaintiff's rights requiring a remedy in connection with the Solicitation. The court does not perceive any basis in this case for it to look forward and issue any orders regarding potential solicitations that defendant may or may not issue in the future. Injunctive relief is an extraordinary remedy. Plaintiff has failed to demonstrate its entitlement to any remedy, let alone an extraordinary remedy. Plaintiff's request for an injunction against the Navy "from awarding any future armor solution kit contracts to SCGP," Pl.'s Memo 19, is DENIED.

## III. Conclusion

For the foregoing reasons, plaintiff's request to enjoin SCGP from further performance under the contract that arose from the Solicitation is MOOT; plaintiff's request to enjoin defendant from awarding future contracts to SCGP is DENIED; and defendant's Motion to Dismiss is GRANTED-IN-PART as to plaintiff's request to enjoin SCGP from completing its contract with the Navy. Plaintiff's motion for judgment on the AR is DENIED. Defendant's motion for judgment on the AR is GRANTED. The Clerk of the Court shall enter judgment for defendant. No costs.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge